UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MICHAEL L.,[1] ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> ANDREW M. SAUL, Commissioner of the Social ) <br> Security Administration, ) <br> ) <br> Defendant. ) | No. 1:19-cv-04627-JMS-DML |

**ENTRY REVIEWING THE COMMISSIONER'S DECISION**

Plaintiff Michael L. applied for supplemental security income ("SSI") from the Social Security Administration ("SSA") on September 22, 2016, alleging an onset date of August 26, 2016. [Filing No. 5-2 at 16.] His application was initially denied on December 29, 2016, [Filing No. 5-4 at 4], and upon reconsideration on April 12, 2017, [Filing No. 5-4 at 11]. Administrative Law Judge Shelette Veal (the "ALJ") held a hearing on March 5, 2019. [Filing No. 5-2 at 35-61.] The ALJ issued a decision on March 21, 2019, concluding that Michael L. was not entitled to receive SSI. [Filing No. 5-2 at 13.] The Appeals Council denied review on September 24, 2019. [Filing No. 5-2 at 2.] On November 21, 2019, Michael L. timely filed this civil action asking the Court to review the denial of benefits according to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c). [Filing No. 1.]

---

[1] To protect the privacy interests of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

1

## I.
### STANDARD OF REVIEW

"The Social Security Act authorizes payment of disability . . . benefits . . . to individuals with disabilities." *Barnhart v. Walton*, 535 U.S. 212, 214 (2002). "The statutory definition of 'disability' has two parts. First, it requires a certain kind of inability, namely, an inability to engage in any substantial gainful activity. Second, it requires an impairment, namely, a physical or mental impairment, which provides reason for the inability. The statute adds that the impairment must be one that has lasted or can be expected to last . . . not less than 12 months." *Id.* at 217.

When an applicant appeals an adverse benefits decision, this Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citation omitted). For the purpose of judicial review, "[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted). Because the ALJ "is in the best position to determine the credibility of witnesses," *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008), this Court must accord the ALJ's credibility determination "considerable deference," overturning it only if it is "patently wrong." *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (quotations omitted).

The ALJ must apply the five-step inquiry set forth in 20 C.F.R. § 416.920(a)(4)(i)-(v),[2] evaluating the following, in sequence:

---

[2] The Code of Federal Regulations contains separate, parallel sections concerning disability insurance benefits and SSI, which are identical in most respects. Cases may reference the section pertaining to disability insurance benefits, such as in *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000), *as amended* (Dec. 13, 2000), which cites 20 C.F.R. § 404.1520. Generally, a verbatim section exists establishing the same legal point with both types of benefits. The Court has substituted the section pertaining to SSI here but will not always reference the parallel section. The Court will take care to detail any substantive differences that are applicable to the case.

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform [his] past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford*, 227 F.3d at 868 (citations omitted). "If a claimant satisfies steps one, two, and three, [he] will automatically be found disabled. If a claimant satisfies steps one and two, but not three, then [he] must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After Step Three, but before Step Four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling." *Id.* The ALJ uses the RFC at Step Four to determine whether the claimant can perform his own past relevant work and if not, at Step Five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 416.920(a)(4)(iv), (v). The burden of proof is on the claimant for Steps One through Four; only at Step Five does the burden shift to the Commissioner. *See Clifford*, 227 F.3d at 868.

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Barnett*, 381 F.3d at 668. When an ALJ's decision is not supported by substantial evidence, a remand for further proceedings is typically the appropriate remedy. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). An award of benefits "is appropriate only where all factual issues have been resolved and the record can yield but one supportable conclusion." *Id.* (citation omitted).

3

## II.
### BACKGROUND

Michael L. was 53 years of age at the time he filed the application under review. [*See* Filing No. 5-5 at 2.] He has completed high school. [Filing No. 5-6 at 7.] He testified that he has had some brief employment—between medical events—during the last fifteen years, but the ALJ did not find any evidence of income in the record. [Filing No. 5-2 at 39-41.][3]

The ALJ followed the five-step sequential evaluation set forth by the Social Security Administration in 20 C.F.R. § 416.920(a)(4) and ultimately concluded that Michael L. was not disabled. [Filing No. 5-2 at 28.] Specifically, the ALJ found as follows:

- At Step One, Michael L. had not engaged in substantial gainful activity[4] since September 22, 2016, the application date.[5] [Filing No. 5-2 at 18.]

- At Step Two, he had "the following severe impairments: degenerative disc disease of the cervical spine, residuals status post spinal fusion; degenerative disc disease of the lumbar spine; diabetes mellitus; chronic obstructive pulmonary disease; and gastroesophageal reflux disease." [Filing No. 5-2 at 18 (citation omitted).]

- At Step Three, he did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. [Filing No. 5-2 at 19.]

- After Step Three but before Step Four, Michael L. had the RFC "to perform medium work as defined in 20 CFR 416.967(c) except: no climbing ladders, ropes, or scaffolds; occasional climbing ramps or stairs; frequent balancing on level surfaces; occasional stooping, kneeling, crouching, and crawling; and no concentrated exposure to fumes, odors, dusts, or gases." [Filing No. 5-2 at 20.]

- At Step Four, there was no past relevant work to consider. [Filing No. 5-2 at 27.]

---

[3] The relevant evidence of record is amply set forth in the parties' briefs and need not be repeated here. Specific facts relevant to the Court's disposition of this case are discussed below.

[4] Substantial gainful activity is defined as work activity that is both substantial (*i.e.*, involves significant physical or mental activities) and gainful (*i.e.*, work that is usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 416.972(a).

[5] SSI is not compensable before the application date. 20 C.F.R. § 416.335.

- At Step Five, relying on the testimony of the vocational expert ("VE") and considering Michael L.'s age, education, work experience and RFC, there were jobs that existed in significant numbers in the national economy that he could have performed through the date of the decision in representative occupations such as a warehouse worker, hand packager, and hospital housekeeper. [Filing No. 5-2 at 27-28.]

## III.
### DISCUSSION

Michael L. makes two assertions of error, arguing that the ALJ failed to: (1) credit the need for a cane in the RFC, and (2) explain her RFC finding with regards to Michael L.'s peripheral neuropathy and related symptoms. The Court will address each assignment of error in turn.

### A. Failure to Credit the Need For a Cane

Michael L. argues that there is overwhelming evidence that he required the use of a cane to ambulate. [Filing No. 7 at 17.] He contends that the ALJ never discussed his propensity for falling. [Filing No. 7 at 18.] He asserts that the ALJ played doctor when she determined that a cane was not medically required. [Filing No. 7 at 18.]

The Commissioner argues that the ALJ thoroughly considered Michael L.'s alleged need to use a cane. [Filing No. 11 at 17.] The Commissioner contends that the ALJ made the required determination whether a cane was medically necessary. [Filing No. 11 at 17-18.] The Commissioner asserts that the ALJ considered the evidence that one of Michael L's treating providers ordered him a cane, but the ALJ found the provider's treatment notes insufficient to establish that it was necessary. [Filing No. 11 at 18-19.] The Commissioner contends that the evidence of cane use did not meet Michael L.'s burden to establish that one was required; and the ALJ's relevant determination was supported by substantial evidence. [Filing No. 11 at 20-21.]

In his reply, Michael L. asserts generally that the ALJ's decision must be reviewed according to the rationales it advances; and the presence of reversible legal error is not cured by a decision that is otherwise supported by substantial evidence.  [Filing No. 12.]

The SSA's own guidance provides that an "adjudicator must always consider the particular facts of a case" regarding the use of hand-held assistive devices.  Social Security Ruling ("SSR") 96-9p (S.S.A. July 2, 1996), 1996 WL 374185, at *7.  The ruling explains:

> To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information).

*Id.*  In *Tripp v. Astrue*, 489 F. App'x 951, 955 (7th Cir. 2012) (emphasis in original), the Seventh Circuit described the difference between evidence of use and necessity:

> In our view, the record adequately supports the finding of no medical necessity. The record is replete with references to Tripp's use of "crutches," "a crutch," or "a cane," but these mentions are traceable to his self-reports and to physicians' observations that he presented with an assistive device.  Even the statement of Dr. Motiani, who in his letter to the state agency asserted matter-of-factly that Tripp "does need a crutch," lacks the specificity necessary to determine whether this was the doctor's medical opinion or merely a restatement of what was told to him by Tripp.

Here, the ALJ's concluding paragraph of her discussion of the RFC finding began by addressing the relevant, required legal determination:

> Throughout the relevant time period, the claimant has focused on his issues with chronic pain.  However, he has had few clinical deficits.  He intermittently used a cane, but not every physician acknowledged evidence of an antalgic gait.  In fact, he was not found to have an abnormal gait until well after his physical consultative examination.  He was given multiple orders for a cane, but it does not appear that this has been medically necessary.

[Filing No. 5-2 at 27.]

The ALJ's preceding discussion of the relevant evidence was not exhaustive, but thorough. "The ALJ is not required to mention every piece of evidence but must provide an 'accurate and logical bridge' between the evidence and the conclusion that the claimant is not disabled, so that 'as a reviewing court, we may assess the validity of the agency's ultimate findings and afford [the] claimant meaningful judicial review." *Craft*, 539 F.3d at 673 (quoting *Young v. Barnhart*, 362 F.3d 995, 1002 (7th Cir. 2004)). "The ALJ must confront the evidence that does not support her conclusion and explain why that evidence was rejected." *Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014) (citing *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004)).

The ALJ acknowledged that Michael L.'s primary care nurse practitioner, Heather Sheets, had ordered a cane for him on multiple occasions, including in October 2016, [Filing No. 5-2 at 22], and in February 2019, [Filing No. 5-2 at 25.] Ms. Sheets authorized "Durable Medical Equipment Orders" on Michael L.'s behalf; though these orders, presumably necessary for financial coverage, do not elaborate on the specific situations for which the cane was needed or the basis for the need except by listing a diagnosis. [*See* Filing No. 5-6 at 46 (February 14, 2019, for "[o]ther chronic pain"); Filing No. 5-6 at 47 (June 4, 2015, for "low back pain" or "Lumbago"); Filing No. 5-6 at 48 (October 31, 2016, for "[p]ersonal history of transient ischemic attack (TIA), and cerebral infarction *without residual deficits*") (emphasis added).] In *Tripp*, the Seventh Circuit explained that "though no published appellate decision addresses the precise documentation a claimant must provide, the Third and Tenth Circuits in non-precedential decisions have required an unambiguous opinion from a physician stating the circumstances in which an assistive device is medically necessary." 489 F. App'x at 955 (citing *Spaulding v. Astrue*, 379 F. App'x 776, 780 (10th Cir. 2010) (provision of cane to claimant by Veterans Administration medical service at physician's request did not satisfy medical necessity standard); *Howze v. Barnhart*, 53 F. App'x

218, 222 (3d Cir. 2002) (concluding that doctor's reference to "script" for cane was insufficient to establish medical necessity) (additional citation omitted)).  Ms. Sheets's orders for a cane are not dispositive that one was medically required.

Moreover, the ALJ contrasted Ms. Sheets's orders with her own examination findings, in which she never documented that Michael L. had an abnormal gait.  [Filing No. 5-2 at 25.]  For example, on March 1, 2018 she indicated he was "ambulating normally."  [Filing No. 5-16 at 22.]  On August 22, 2018, Ms. Sheets observed that he "[c]arried a cane, but did not use it.  Wants note regarding disability[.]"  [Filing No. 5-16 at 10.]

The ALJ reasoned further that "[a]side from records from one neurologist, there is no indication that the claimant has had worsening of his condition since the time the state agency medical consultants reviewed his case.  The various other records from other specialists establish that his presentation has been inconsistent."  [Filing No. 5-2 at 27.]  The ALJ addressed the one treating provider's abnormal findings—documented in multiple visits—including what the ALJ characterized as a "very mild reduction in strength," "some loss of sensation," and "an abnormal gait."  [Filing No. 5-2 at 25.]  The examination findings recorded by Karen Klutzke[6] were all very consistent—or perhaps simply repeated at each appointment—including "no motor disturbances" except "reduced strength left lower extremity 4+/5," an "involuntary movements tremor" in the "postural" upper extremities rated as "mild," "normal" reflexes, though slightly decreased in all

---

[6] The ALJ identified Ms. Klutzke as "Karen Klutzke, M.D." [Filing 5-2 at 24.]  As implied above, the ALJ also assumed that Ms. Klutzke was a neurologist and a specialist.  Michael L. identifies Ms. Klutzke as a treating "neurosurgeon."  [Filing No. 7 at 9.]  The Court was unable to find any documentation of Ms. Klutzke's professional credentials in the record.  Ms. Klutzke is actually a "board certified physician assistant specializing in general neurology."  Indiana Neuroscience Associates, http://www.indiananeurologist.com/our-providers.html (last visited June 25, 2019).  However, the Court did not factor Ms. Klutzke's actual credentials into the analysis here because of the lack of clarity in the record and relevant arguments by the parties, as well as the ALJ's assumptions.

extremities, decreased sensation to light touch, vibration, temperature, and pinprick in a "stocking-glove distribution," and "gait and stance abnormal using [a] cane, slow and arthritic." [*See, e.g.*, Filing No. 5-18 at 28 (May 1, 2018).]

However, the ALJ contrasted the limited abnormalities recorded by Ms. Klutzke with the consistently normal contemporaneous examinations performed by Michael L.'s other treating providers. [Filing No. 5-2 at 25.] As discussed above, his primary care provider, Ms. Sheets did not document abnormalities. For another example, on October 22, 2018, Michael L.'s endocrinologist noted that he "walks without restrictions," had "normal gait and stance," had normal sensation on monofilament wire testing and to vibration, had normal reflexes throughout, and appeared to have "no pain or signs of discomfort and [he was] well-developed." [Filing No. 5-17 at 5-6.]

The ALJ also discussed multiple emergency room visits when Michael L. sought treatment after allegedly falling. [Filing No. 5-2 at 22-23.] On October 11, 2016, the emergency room physician noted that there was no evidence indicating a recent fall and "patient has no radicular symptoms. Patient rates pain as a 10 over 10 but he appears to be in no distress." [Filing No. 5-10 at 13.] His discharge diagnosis was only a muscle strain in his shoulder. [Filing No. 5-10 at 16.] On July 10, 2017, Michael L. alleged that he had fallen out of an electric wheelchair three days before; he presented ambulating with a cane and wearing a back brace. [Filing No. 5-15 at 41.] The examination indicated that he "appears to be uncomfortable but he is in no acute distress. The patient has pain in the left sacroiliac region. He has no evidence of abrasion to that area. Patient reports that his pain is nonradiating. . . . Extremities are uninvolved. Neurologic examination is negative." [Filing No. 5-15 at 42.] The emergency room physician noted that "x-rays were negative. The anticipation is that this should do well with conservative management

only." [Filing No. 5-15 at 42.] The emergency room evaluations did not indicate that Michael L.'s alleged falls were caused by his impairments.

The ALJ confronted the pertinent evidence and gave reasonable rationales for rejecting such evidence when it conflicted with her determination. The Court is able to trace the ALJ's logic in reaching those conclusions; and her conclusions were supported by citation to record evidence. According to the standard of review, little more is required. The Seventh Circuit has recognized that "challenges to the sufficiency of the evidence rarely succeed." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005). Here, the ALJ's determination that a cane was not medically required was supported by substantial evidence.

The remaining argument advanced by Michael L. was that the ALJ committed legal error by making the determination of whether a cane was medically required without the assistance of a medical expect. Generally, the Seventh Circuit has remanded instances where the ALJ "played doctor" by interpreting significant, updated evidence without expert input. *See, e.g.*, *Akin v. Berryhill*, 887 F.3d 314, 316-18 (7th Cir. 2018). Michael L. does not cite any authority that the determination required by the SSA that an ALJ assess whether a hand-held assistive device is medically required is a medical determination *per se*, rather than a legal determination.

Here, there is no opinion in the record from an acceptable medical source that a cane was medically required. The ALJ gave significant weight to the state agency reviewing consultants' assessments in formulating Michael L.'s RFC. [Filing No. 5-2 at 25.] As discussed above, the ALJ also relied on Ms. Sheets's observation that Michael L. did not use the cane he carried during a treatment visit, as well as an emergency room physician's assessment that Michael L.'s allegations were not consistent with his presentation. Furthermore, the ALJ detailed the findings of a consultative examination performed by Ami Rice, M.D.:

10

> The claimant walked with a normal gait (Ex. D11F at 4). He was able to stand on his heels and toes, although he complained of pain while standing on his right toes (Ex. D11F at 3). He was able to walk in tandem, as well as squat down to the floor (Ex. D11F at 4). The claimant had tenderness about his cervical spine (Ex. D11F at 4). He had full motion throughout his entire spine, as well as his extremities (Ex. D11F at 4). Straight leg raising was positive for non-radiating low back pain while raising the left thigh (Ex. D11F at 4). . . . The claimant had no neurologic deficits (Ex. D11F at 4). He had full strength, normal sensation, and symmetric reflexes (Ex. D11F at 4). Overall, after a thorough evaluation, Dr. Rice acknowledged the claimant's discussion of conditions (Ex. D11F at 4). However, [she] stated that he was able to perform all movements, like walking, sitting, squatting, bending, hand movements, and other manipulative movements with the hands or feet (Ex. D11F at 4).

[Filing No. 5-2 at 23.] Dr. Rice also concluded that the "[c]linical evidence does not support the need for an ambulatory aid." [Filing No. 5-13 at 62.]

As discussed above, the ALJ acknowledged that Ms. Klutkze's examination findings arguably supported some progression of Michael L.'s impairments. However, she contrasted those findings with normal findings from other providers evaluating the same clinical signs. Such a direct comparison is an ALJ's prerogative; the standard of review does not allow the Court to reweigh evidence, resolve conflicts, or determine the credibility of witnesses. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). Moreover, on January 2, 2019, when Michael L. treated with a neurologist with the same provider, Caryn Vogel, M.D., she assessed that "[h]is symptoms are extreme and more than what would be expected from the last MRI reports. I did review past records as this is our first face to face evaluation." [Filing No. 5-18 at 52.] There was ample evidence from experts to support the ALJ's relevant conclusions, which were uncontradicted by any definitive statement from an acceptable medical source that a cane was medically required. Accordingly, the ALJ did not err by playing doctor. The Court finds no basis to overturn the ALJ's determination that a cane was not medically required.

11

### B. Whether the ALJ Erred in its RFC Determination

Michael L. argues that the denial of benefits is not supported by substantial evidence because "the ALJ failed to discuss particular illnesses" and painted a skewed picture of the evidence that does not provide a logical bridge to the ALJ's conclusions. [Filing No. 7 at 22.] Michael L. contends that the ALJ erred at Step Two by not discussing his peripheral neuropathy. [Filing No. 7 at 22.] He identifies his own allegations, a reference to cervical radiculopathy made by an examining physician, and objective findings by treating providers, including decreased reflexes, sensation, and the presence of a tremor. [Filing No. 7 at 22-23.] He asserts that the ALJ did not provide an adequate discussion of how an individual with his impairments could perform the lifting and carrying requirements of medium exertional work. [Filing No. 7 at 23.] He also notes that the ALJ is obligated to consider all the impairments, both severe and non-severe, in the RFC finding. [Filing No. 7 at 23-24.]

The Commissioner argues that the ALJ cited evidence from the consultative examination that Michael L. had normal use of his hands. [Filing No. 11 at 15.] The Commissioner contends that hand issues were an afterthought during Michael L.'s hearing testimony and he admitted the symptoms could be resolved by rubbing his hands together. [Filing No. 11 at 15.] The Commissioner also contends that error cannot be established with the RFC finding when no opinion of record has assessed greater limitations. [Filing No. 11 at 17.]

In his reply, Michael L. asserts generally that the ALJ's decision must be reviewed according to the rationales it advances; and the presence of reversible legal error is not cured by a decision that is otherwise supported by substantial evidence. [Filing No. 12.]

The Seventh Circuit has held that "[a]s long as the ALJ determines that the claimant has one severe impairment, the ALJ will proceed to the remaining steps of the evaluation process."

*Castile v. Astrue*, 617 F.3d 923, 926-27 (7th Cir. 2010) (citing 20 C.F.R. § 404.1523; *see Golembiewski v. Barnhart,* 322 F.3d 912, 918 (7th Cir. 2003) ("Having found that one or more of [appellant's] impairments was 'severe,' the ALJ needed to consider the *aggregate* effect of the entire constellation of ailments—including those impairments that in isolation are not severe.")). "Therefore, the step two determination of severity is 'merely a threshold requirement.'" *Castile,* 617 F.3d at 927 (quoting *Hickman v. Apfel,* 187 F.3d 683, 688 (7th Cir. 1999)). Here, as noted above, the ALJ found that Michael L. had severe, physical impairments, including diabetes mellitus and degenerative disc disease of the cervical spine. Accordingly, the ALJ assessed an RFC to be considered at the later steps.

As discussed in the first assignment of error, the ALJ gave significant weight to the assessments of the state agency reviewing consultants. Consistent with the ALJ's RFC finding, the consultants both assessed that Michael L. would be capable of lifting and carrying 50 pounds occasionally, 25 pounds frequently, and he would have no manipulative limitations. [Filing No. 5-3 at 26; Filing No. 5-3 at 37.] There is no opinion of record that contradicted either the state agency assessments or the ALJ's RFC finding by assessing further limitations than those found by the ALJ. The Seventh Circuit has held that "[w]hen no doctor's opinion indicates greater limitations than those found by the ALJ, there is no error." *Dudley v. Berryhill*, 773 F. App'x 838, 843 (7th Cir. 2019) (citing *Rice v. Barnhart*, 384 F.3d 363, 370 (7th Cir. 2004)).

Moreover, the ALJ did not ignore Michael L.'s alleged issues with hands at the later steps of the evaluation beyond Step Two. When discussing whether his diabetes mellitus met or medically equaled a listing at Step Three, the ALJ explained that Michael L. "did complain of neuropathy. However, his endocrinologist never noted any issues with his gait or fine and gross manipulative abilities." [Filing No. 5-2 at 20 (citations omitted).] The ALJ noted in the discussion

13

of Michael L.'s testimony that he alleged numbness in his hands. [Filing No. 5-2 at 21.] When discussing her RFC finding, the ALJ detailed the findings of the consultative examination. [Filing No. 5-2 at 23.] The examination revealed "[m]ild bony enlargement of [the] MCP and PIP joints," but was otherwise completely normal in all relevant respects, with full range of motion in the upper extremities and cervical spine, full muscle strength in all the extremities included with grip, normal Tinel's sign and Phalen's maneuver, no spasms, normal reflexes, he "demonstrated good manual dexterity," and he "was able to oppose thumb to touch ipsilateral fingers in tandem." [Filing No. 5-13 at 62.] The ALJ noted that Michael L.'s pain medications were adjusted at one point when Ms. Klutzke "prescribed Gabapentin for complaints of numbness and tingling in a stocking-glove pattern." [Filing No. 5-2 at 24 (citation omitted).]

The ALJ also detailed a thorough evaluation in December 2017 during an emergency room visit for neck and arm pain that included a targeted examination of Michael L.'s neck and upper extremities, as well as updated CT imaging of his cervical spine. [Filing No. 5-2 at 24.] He was noted to be out of his medication, Flexeril. [Filing No. 5-15 at 34.] On examination, he complained of pain with certain maneuvers but retained full range of motion with preserved gross sensation. [Filing No. 5-15 at 35.] He was able to grip the emergency room physician's hand without radiating pain. [Filing No. 5-15 at 35.] The physician noted that the CT scan "was negative for any acute process[,] however[,] I do feel that this is a cervical radiculopathy." [Filing No. 5-15 at 35.] Michael L. was to follow-up with his neurologist.

However, the record does not show that any further diagnostic evidence was gathered to confirm a diagnosis of cervical radiculopathy. There are also no electromyography or nerve conduction studies to assess the severity of Michael L.'s peripheral neuropathy or cervical radiculopathy. Ms. Klutzke did assess Michael L. to have diabetic peripheral neuropathy, which

she noted was stable with medication. [Filing No. 5-18 at 45.] Her examinations also showed some decreased sensation and mild postural tremors in the bilateral hands. [*See, e.g.*, Filing No. 5-18 at 44.] The ALJ did not mention those particular examination findings. However, as discussed in the first assignment of error, she noted that Ms. Klutzke's examination findings showed abnormalities but were also an outlier in the record. Even Ms. Klutzke's examinations indicated normal muscle strength in the upper extremities.

As such, the Court does not conclude that the record contained significant medical evidence that postdated the agency reviews. Based on the predominantly normal examination findings from the consultative examiner, the emergency room physician's evaluation of cervical radiculopathy, and the absence of any opinion that assessed greater limitations than the ALJ, the ALJ's RFC finding is supported by substantial evidence.

## IV.
### CONCLUSION

"The standard for disability claims under the Social Security Act is stringent." *Williams-Overstreet v. Astrue*, 364 F. App'x 271, 274 (7th Cir. 2010). "Even claimants with substantial impairments are not necessarily entitled to benefits, which are paid for by taxes, including taxes paid by those who work despite serious physical or mental impairments and for whom working is difficult and painful." *Id.* Taken together, the Court can find no legal basis presented by Michael L. to reverse the ALJ's decision that he was not disabled during the relevant time period. Therefore, the decision below is **AFFIRMED**. Final judgment will issue accordingly.

Date: 6/30/2020

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

All Electronically Registered Counsel